# RAILWAY CO. *v.* MADDRY.

## Opinion delivered February 18, 1893.

1. *Wrongful death—Mitigation of damages—Receipt of pension.*
   In a suit by the administratrix for the benefit of the widow and next of kin of a person who was killed by the negligent act of another, it was proved that intestate was receiving a monthly pension from the government. The court refused to admit evidence that the widow and minor children were, upon certain conditions, entitled in their own right to receive pensions upon intestate's death.

   *Held,* that the evidence was properly rejected, since the court will take notice of the act of Congress granting such pensions, without proof.

   *Held,* also, that the conditional provision of the government for the benefit of the widow and minor children of the deceased pensioner should not be considered in mitigation of the damages sustained by them by reason of his death.

2. *Contributory negligence—Case stated.*
   Plaintiff's intestate had taken his seat as a passenger in a car, in the rear of the train, which had been put in place to receive passengers; and while he was seated waiting for it to proceed,

another train approached from the rear at a great speed. He realized the danger and attempted to escape, but was killed on the platform. Other passengers got off the car and were uninjured. One who remained in the car was not killed. *Held*, that there was no evidence to establish contributory negligence on the part of intestate.

3. *Contributory negligence—Blind passenger.*

The fact that intestate was almost blind does not make him chargable with contributory negligence in attempting to travel without an attendant, even if sight would have enabled him to escape injury; since his blindness was not the juridical cause of his injury, but only a condition that made it possible.

4 *Child's loss from death of parent.*

The loss to a minor child of the physical, moral and intellectual training of his father is a proper element to be considered in estimating the damage to the child by reason of his father's death.

5. *Damages resulting from death—When not excessive.*

Intestate, who was 52 years old at the time of his death and who had been drawing a pension of $72 per month, died leaving a widow and three children surviving him. He was of industrious habits and ordinary business capacity. His services in educating his minor children might have been found to have a pecuniary value to them. *Held*, that an award of $7500 as damages to his widow and children was not excessive.

Appeal from Hot Spring Circuit Court.

ALEXANDER M. DUFFIE, Judge.

Mary E. Maddry, as administratrix of the estate of her deceased husband, W. T. Maddry, brought suit against the St. Louis, Iron Mountain & Southern Railway Company. The complaint alleged that, on July 21, 1890, intestate was a passenger upon one of the local freight trains of defendant at Malvern; that, while he was in the caboose of said train, it was, by the carelessness of defendant's employees, run into by another train and wrecked; that, by reason of said collision and wreck, Maddry was so badly bruised and injured that he subsequently died; that he left, him surviving, his widow (the plaintiff), two sons of the ages of 23 and 16, respectively, and one daughter of the age of 12 years, as his

only heirs at law; that, by reason of said wrongful death, the widow and next of kin were damaged in the sum of $25,000.

The answer put in issue the allegations of the complaint, and charged that Maddry's death was due to contributory negligence.

Plaintiff recovered a verdict and judgment in the sum of $7500. Defendant has appealed.

*Dodge & Johnson* for appellant.

1. The court erred in giving the sixth instruction and in refusing the instructions asked upon the subject of contributory negligence. Also in giving the fifth prayer for plaintiff as to the measure of damages. Mansf. Dig. secs. 22, 26; 59 Ill. 534; 46 Iowa, 195; 28 Ohio St. 199; 37 Mich. 205; 93 Ill. 302; 55 Ill. 379; 19 Kas. 83; 48 Pa. 320; 18 Iowa, 290; 18 Ill. 349; 51 Ark. 515; 41 *id*. 388.

2. It was error to exclude evidence as to widow and minor receiving a pension from the government after Maddry's death. U. S. Rev. St. secs. 4692–3, 4702. If the widow and family received the same pension after Maddry's death that Maddry received, where is their loss?

4. The verdict is excessive.

*Sanders & Watkins* for appellee.

1. The court properly ruled out the evidence as to pension received by Mrs. Maddry. The amount of pension to be granted was a question of law. The courts take judicial knowledge of the laws of the United States. Newman, Pl. & Pr. 269. The question was improper. But the rule is that expected bounty from the government, charity, insurance, etc., cannot mitigate damages for a wrong. 74 Ga. 857; Suth. on Dam. vol. 1, p. 242; 36 N. J. L. 213; 43 Vt. 536; 38 Barb. 569.

2. Loss of instruction and physical, moral and intellectual training of minor children,   *   *   *   etc., is a

pecuniary injury, and may be considered by the jury in estimating damages.   29 N. Y. 252; 37 *id.* 287; 31 Am. & Eng. R. Cases, 229.

3.   There was no evidence upon which to base the prayers asked upon the subject of contributory negligence.

4.   The verdict is not excessive.

HEMINGWAY, J.   The appeal is put upon the following grounds, to-wit:

1.   That the court excluded competent evidence on part of defendant.

2.   That the court erred in directions given to the jury with regard to the law of contributory negligence.

3.   That the court erred in refusing prayers for instructions with regard to the law of contributory negligence; and

4.   That the damage awarded by the verdict is excessive.

The grounds stated cover all questions relied upon by the appellant, and we proceed to consider them in the order set out.

1.   Mrs. Maddry, the widow, was introduced as a witness for the plaintiffs, and testified that when her husband was killed, he was drawing a pension from the government of $72 per month.   The record discloses that, after she had so testified and while she was under cross-examination, the following occurred.   She said:

"I am not getting a pension now, but have made application for one.   Q.   For what amount?   A.   For whatever they will give me.   Q.   Your pension has not yet been passed on?   A.   No sir.   Q.   Have you made application for a pension for your children?   A. No sir, only for one, the youngest.   Q. What is the amount of the pension to be granted you by the government?"

Here counsel for plaintiff objected to this question; also to all further testimony about the widow and minor

1.  As to mitigation of damages for wrongful killing.

children of the deceased receiving a pension since his death. The court sustained the objection and ruled as follows :

"If the jury should find for plaintiff, they will be instructed that, in considering the damages that the widow and children might have sustained by the loss of the deceased, W. T. Maddry, they will not take into consideration any pensions that they have received from the government in consequence of the loss of the life of W. T. Maddry."

We entertain no doubt that the court ruled correctly in excluding the proof offered. The widow had testified that she was drawing no pension, and if she was entitled to draw one the amount of it was fixed by a public act of Congress. If the right it conferred affected the issues in this case, it should have been brought to the attention of the jury by instruction from the court, and not by the testimony of a witness.

If, however, the plaintiffs, or any of them, were entitled to a pension which it was proper to consider in mitigation of their damages, there was error in the statement made by the court after ruling upon the admission of the testimony offered. As this action was not embraced among the grounds set out in the motion for a new trial, we would not be able, perhaps, to reverse the judgment on account of it, even if we found it to be erroneous. But we are of the opinion that there was no error in it. In estimating the amount of the pecuniary advantage that the widow and children could reasonably expect from a continuance of Maddry's life, it was proper to consider the amount of his income, including the monthly pension of seventy-two dollars, since there was a reasonable probability that he would have continued to receive it, if he had lived, and that he would have applied it or part of it to their use ; and since they lost by his death all expectation of advantage from it. But the

loss was consummate at his death, and its extent measured the plaintiff's injury, which could not be affected by the fact, either that they thereafter did, or did not, obtain some other valuable right, or receive an independent gratuity.

If, by the terms of the law, a pension had been granted, and made payable to him for his life, and to his widow and children upon his death, it may be that the matter would not have been proper for consideration, as his death would have caused no deprivation in that respect. *Demarest* v. *Little*, 47 N. J. L. 28. But such is not the law. Under the law, the pension granted to him lapsed at his death, and did not pass by limitation to plaintiffs. By the provisions of an act approved June 27, 1890, the widow, if without other means of support than her daily labor, was entitled to demand eight dollars per month for herself and two dollars per month for each of the children under sixteen years of age, to begin from the date of the application for it. See Acts U. S. Cong. of 1890, p. 182. But this right is conditional, not absolute ; it is confined to the widow and children under sixteen, and the older children do not share in it; and it is a new right conferred upon the widow and young children, and not an old one passing from the deceased to them. The appellant's argument rests upon the idea that the right of the ex-soldier passes upon his death to his widow and children, and refers to section 4702 of the Revised Statutes of the United States to sustain it; but in our opinion the particular section relied upon is wholly inapplicable to this case— being applicable only where the ex-soldier dies from the wound, injury or disability on account of which the pension was granted.

No case is cited in which this precise question was involved ; but our attention has been called by the appellee to a line of authorities that are relied upon as com-

ing within the same principle, and as determining the question against the appellant. They seem to be generally approved by the courts of the different States. The rule deducible from them is that it cannot be shown in mitigation of damages that the plaintiff acquired property by descent from the deceased, or received a sum of money for insurance upon his life. 2 Sedg. on Dam. sec. 583 and cases cited.

And in a kindred case in Ohio, where a husband sued for the death of his wife, it was held that his recovery could not be reduced by proof that he had married a second wife who performed the services formerly performed by the first wife. *Davis* v. *Guarnieri*, 45 O. St. 470. The reason is, that a right of action arises at the time of the death to recover just what was lost by it; and that the loss thus occasioned is none the less, even though the injured party thereafter acquire, through his own skill or industry or the charity or affection of others, more than he lost.

We see nothing in the question presented to distinguish it from those ruled in the cases referred to, and, upon the doctrine they establish, we hold that the conditional provision of the law for the benefit of the widow and child under sixteen was not proper to be considered in mitigation of damages.

3. As to contributory negligence.

2. It is insisted that, with regard to the law of contributory negligence, the court gave an instruction, at the prayer of plaintiffs, that was misleading, and declined to give instructions, at the prayer of defendant, that stated the law correctly. We have not looked to the instructions to determine this question, for we are of opinion that there was no evidence to which a charge upon that subject could be applicable, and that since contributory negligence is not presumed but must be proved, such an error, if committed, was without prejudice. In support of this conclusion, it is proper to state

generally the case as made by uncontradicted proof. Maddry had taken his seat as a passenger in a car that had been put in place to receive passengers; it was in the rear of the train, and while he was seated waiting for it to proceed, another train approached from the rear at a great speed; he and other passengers in the car realized the danger and attempted to escape from it; some got off, while one was caught in the car; Maddry got to the platform when the car was run into and wrecked, and he was killed. The passengers who got off the car were not injured, and the one who did not get out was not killed.

These circumstances, it is contended, had sufficient tendency to establish contributory negligence, to warrant a submission of it under proper instructions to the jury. But we think they have no tendency in that direction. When it became apparent that the running train would strike the car, the danger to those who remained in it was unmistakable. Self-preservation dictated flight, and all the passengers attempted it. In the attempt Maddry was killed, while others reached places of safety, and one who was caught in the car, strangely enough, survived its wreck; but there is nothing to show that Maddry's fate was due to any careless, negligent or incautious act of his. It certainly did not appear safe, and was not incumbent upon him to keep his seat in the car about to be wrecked; and if he could have escaped, but negligently or carelessly failed to do it, the fact is not shown.

In support of the same ground the defendant relies upon the fact that Maddry was almost blind, from which it argues that he was guilty of negligence in attempting to travel without an attendant. To this it is perhaps sufficient to say that, even if sight would have enabled him to escape, blindness was not the juridical cause of his injury, but only a condition that made it possible, as

3. Not contributory negligence for blind passenger to travel alone.

was his presence in the car.    *Martin* v. *Railway. Co.* 55
Ark. 510; *St. Louis etc. R. Co.* v. *Commercial Ins. Co.* 139
U. S. 223; *Ihl* v. *Railroad Co.* 47 N. Y. 323.   If he had
blindly run afoul the moving train and had been injured,
negligence might be imputable to him; but as his sight
enabled him to enter safely the car intended for him,
and he was there run down and injured by the wild
train, the fact that he could not run fast enough to
escape is not chargeable to his negligence—no matter
whether his inability was due to the unexpected approach
or unusual speed of the train, or to his blindness or other
infirmity.    If the law were otherwise, the child of tender
years, the crippled or the infirm would travel at his own
risk, and only the professional runner or athlete could
claim damages for injury in being run down by a train.

4. As to
child's loss
from father's
death.

3.   As bearing upon the measure of damages the
plaintiffs asked and the court gave the following
instructions:    "4.   Should you find for the plaintiff,
*   *   *   you are instructed that the plaintiff is entitled
to recover as damages in this cause of action such a sum
of money as will be a fair and just compensation with
reference to the pecuniary injuries, resulting from the
death of the said Wm. T. Maddry, to the widow and
children of the said deceased.    5.   The jury are instructed
that, in estimating the pecuniary injury, if they believe
from the evidence that the widow and children of the
said Wm. T. Maddry, deceased, have sustained any
injury for which the defendant is liable, they have a
right to take into consideration the support of the said
widow and the minor children of said deceased and the
damages, if any, sustained by the minor children by the
loss of the instruction and physical, moral and intellec-
tual training of the said minor children, by the deceased,
and also the ages of the said minor children in determin-
ing the amount of damages."

The defendant concedes that the first instruction states the law correctly, but strenuously contends that the second is erroneous because it authorizes the jury to consider, in estimating the damage, "the loss of instruction and physical, mental and moral training of the minor children." This objection presents a question not settled by any decision of this court, though it has been considered frequently in the courts of other States. As a preliminary to its consideration, it may be remarked that no class of actions has received a larger share of the time of the various courts than that arising under Lord Campbell's act and similar acts in the different States. The result of the cases is the statement of a rule for the measure of damages with almost entire unanimity; and although the rule, at first glance, seems simple enough for the grasp of the commonest mind, in its application it has been found to involve unusual intricacy and difficulty.

Under Lord Campbell's act and such similar acts in different States as were not intended to enlarge the recovery it allows, it has been uniformly held that the amount recoverable was confined to a pecuniary recompense. No account is allowed of the sorrow or distress of the survivors, nor of their loss of domestic joys; such things being deemed beyond the reach of the pecuniary recompense which the law aims to afford.

The wrong for which the action is given is well defined by the court of appeals of New Jersey as "a deprivation of a reasonable expectation of a pecuniary advantage which would have resulted by a continuance of the life of the deceased" (*Paulmier* v. *Erie Ry. Co.* 34 N. J. L. 151, 158); and the statute aims to restore to the injured parties a sum of money equal to the pecuniary advantage of which they are deprived—to give the money equivalent of a pecuniary expectation lost.

In defining the wrong and stating thus generally the rule for its redress, the authorities are clear and in harmony; but when an attempt is made to deduce from them a rule for determining what particular facts are to be considered in estimating what one member of a family loses by the death of another, difficulty is encountered for which it can hardly be claimed a solution has been found. The complete failure of those who have made the attempt is illustrated in the case of a learned judge who, after charging a jury at *nisi prius* as best he could, told them that if they could devise a better rule than he had stated they were at liberty to do it; and that this is not attributable to the weakness of the particular judge is attested by the fact that the giving of such license to the jury was approved by an appellate court of unquestioned ability. *Penn. R. Co.* v. *McCloskey*, 23 Pa. St. 526; see *Penn. R. Co.* v. *Butler*, 57 Pa. St. 335.

But while it is difficult, and may be impossible, to deduce from the authorities a uniform rule for determining what should, and what should not, be considered in estimating the damage in every case, a rule is deducible that favors the consideration of the loss of the mental, moral and physical training of the parent in a suit by his child. 3 Suth. Dam. (3d ed.) sec. 1267; 2 Sedg. Dam. sec. 577; Wood's Mayne on Dam.*p. 450; *Tilley* v. *Hudson R. R. Co.* 24 N. Y. 471; S. C. 29 N. Y. 282; *McIntyre* v. *N. Y. C. R. Co.* 37 N. Y. 287; *Penn. R. Co.* v. *Goodman*, 62 Pa. St. 329; *Penn. R. Co.* v. *Keller*, 67 Pa. St. 300; *Mansfield Coal Co.* v. *McEnery*, 91 Pa. St. 185; *Balt. & Ohio R. Co.* v. *Wightman*, 29 Gratt. 431; *Board of Commissioners* v. *Legg*, 93 Ind. 523; *Stoher v. Ry.* 91 Mo. 509; *Searle* v. *Ry.* 32 W. Va. 370; *St. Lawrence R. Co.* v. *Lett*, 11 Canada, 422; *Pym* v. *G. N. R. Co.* 2 Best & Smith

(Eng.), 759; *Castello* v. *Landwehr*, 28 Wis. 522; *Ill. Cent. R. Co.* v. *Weldon*, 52 Ill. 290.

It was said by counsel for defendant upon the argument that, though cases growing out of the death of the mother might be found to support the rule, none such growing out of the father's death could be found. This is a misapprehension as to the authorities, for we have cited several cases to support it, growing out of the father's death. And, besides, it seems plain that though there may be a difference in the degree of advantage to the child growing out of the service ordinarily performed by the mother and that by the father, there can be none in kind; and if one is deemed as of pecuniary advantage, it seems to follow that the other would be held as of the same character.

Upon the examination made by us, we find no case that antagonizes the rule stated, but we do find that in the cases that favor it there has not been entire unanimity among the judges. In the case of the *St. Lawrence R. Co.* v. *Lett*, 11 Can. 422, the court approves the rule in an opinion that reviews the authorities, English and American, and sustains its conclusions by reasoning that we deem unanswerable; but in the report of the same case a dissenting opinion is found which maintains the contrary view with admirable force. We have not been able to disregard the persuasive effect of such a line of unconflicting decisions, or to discover that there is error in their conclusion. Its correctness depends upon the correctness of the following propositions: (1) That the age, observation and experience of the father fit him to assist in the physical, mental and moral training of his child; (2) that the natural affection of father for child affords a reasonable expectation that he will render the assistance that he reasonably can toward such training; and (3) that a proper development of the physical, mental and moral qualities of the child is of pecuniary value

to him, either because it must otherwise be bought or because it is an aid in money-getting in after life. It seems to us that neither of the propositions, having reference to men generally, can be questioned; if not, it follows that the service of the father in training his child is of some pecuniary value, independent of what should never be considered—the happiness found in his love and companionship.

Objections raised to this conclusion, as we understand them are, not that the father's training is not a pecuniary advantage to the child, but that there are difficulties in the way of administering the rule that render it improbable that it was intended to prevail. The one most strongly urged is that there is no exact basis for estimating the value of the service lost; but this objection goes as well to the propriety of considering everything else that goes to show the value of the lost expectancy, and if it is to control the law would become valueless. To illustrate: proof is made that a father was able, by his industry, to earn a stated sum, and this is considered in estimating the child's damage, upon the theory that the father would have lived out the average term of life, continued to receive the same sum and to appropriate it, in part at least, to those suing. The theory is destitute of an element of certainty, and is a compound of more or less remote probabilities. The father might not live the average term of life, or, if he did, might cease to earn money; and the child might die during his father's life, or, if he lived, might cease to receive aid. from him, and be compelled to support him; or, if both should live out their expectancy, and the father continue to receive money and to apply it in part to the child, the number of persons interested in the father's life might increase, and the share of the child correspondingly diminish. In no event is it possible to determine with certainty that any pecuniary benefit would have contin-

ued to the child, or, if it did, what it would have amounted .to if the father's life had continued, and all that can be attempted is to make an estimate upon disclosed probabilities. Upon the same basis an estimate can be made of the money value of the father's probable service and care in educating and training the child, for it is no less susceptible of precise calculation than the extent or value of future receipts of property. Another objection is that the rule makes it to the interest of the defendant to show that the father was disqualified to train his child, and that it thereby instigates an unseemly and improper inquisition into the character of the dead; but this objection applies as well to considering his probable earnings. For it is equally as competent and important, in the latter case as in the former, for the defendant to rebut the proable expectancy of receiving money from the father by showing that he was idle, dissipated or thriftless and would probably have earned nothing, or that he was undutiful and would not have shared his earnings with his child.

The legislature must have known that the subject matter of the act did not admit of precision, and that the wrongs it sought to remedy could not be accurately measured; it must have known also that, in awarding to the living their rights under the law, it might become material to expose the ignorance, immorality, idleness, thriftlessness or undutifulness of the dead; and as the law was passed in face of the difficulty and disagreeableness of administering it, it becomes the duty of the courts to attempt to administer it in accordance with its letter and intent.

It is further said that there was no evidence on which to base the charge, and if full and satisfactory proof were required, we should be constrained to say that there was none. But Maddry had been a postmaster, a school director and a promoter of schools, and

there was evidence tending to show that he was industrious in his habits and enjoyed the respect of those who knew him, and that he was an affectionate and dutiful father who tried to rear and educate his children properly; and upon proof of such facts, even if they are not presumed, the plaintiffs were entitled to the instruction.

5. Damages held not excessive. 4. It is argued in the last place that the verdict is excessive. What has been said already may be recurred to as illustrative of the great difficulty of fixing the amount recoverable. From the nature of the wrong to be redressed, it follows that the damage can not be assessed with anything like mathematical precision. It has been said that the damage can not be "calculated," but must be "estimated." Even this term implies a degree of precision of which the matter is hardly susceptible. As the right to make the estimate rests with the jury, whose finding is conclusive unless error is manifest, it follows that it must have great latitude, and that we can not set aside a verdict as excessive unless it clearly exceeds the sum of probable pecuniary benefits.

The proof in this case showed that Maddry drew a pension of seventy-two dollars per month for a total disability received during the war of the rebellion, and it does not appear unreasonable, in view of the course of the government in such matters, to assume that he would have continued to receive it during his life; it was perhaps probable that he would have appropriated of the sum so received as much as six hundred dollars per annum to the use of his family; he was fifty-two years of age, and there was a reasonable probability that he would live out the average term of life. Upon these facts, and for the reasons indicated, the jury would have been justified in awarding a sum that would purchase an annuity of six hundred dollars for the number of years that he

might be expected to live—which, according to tables in common use and treating money as worth eight per cent per annum, would amount to $5208. In addition to the fact just referred to, Maddry seems to have been industrious and energetic, and to have sought and obtained work at times, and this furnished another ground for the expectancy of advantage from his life; he seems to have possessed at least ordinary capacity for business for one in his condition in life, and the service he might be expected to render in taking care of his home furnished still another ground of expectancy. Then his service in educating his children might have been found to have a pecuniary value, and the estimate to be placed upon the several matters referred to would have justified a finding in excess of the sum awarded on account of the pension. In view of them all, it is not so manifest that the value of the plaintiff's reasonable expectancy was less than seventy-five hundred dollars, that we feel warranted in disturbing the jury's finding for that sum.

This is certainly a border case, and we are convinced that the jury went very near the limit upon its power. It may be that this case illustrates the evil to be apprehended in administering the law; but if this is true, it is inherent in the law, and can be remedied only by the power that made the law.

We have given to the consideration of this case much time and the most careful deliberation, seriously apprehending that it exacted too much of the defendant; but our conclusion is that there is no error for which we can reverse the judgment.

The plaintiffs ask that we exercise the discretion, which the law confers upon us, to impose a penalty for the prosecution of this appeal as being unnecessary and for delay; our opinion is that the case does not call for the exercise of this discretion.

Affirm.