## CHARLESTON.

### SNYDER v. PHILADELPHIA COMPANY.

Submitted June 15, 1903—Decided November 21, 1903.

1. SUMMONS—*Record.*

   The summons in an action of tresspass on the case is not a part of the record until made so by oyer.    (p. 151).

2. PLEADING.

   Advantage of a variance between the writ and declaration can be taken by plea in abatement only and after oyer.    (p. 151.)

3. SUMMONS.

   A summons setting forth the full corporate name of a defendant corporation, without reciting that it is a corporation, is sufficient.    (p. 153).

4. DAMAGES.

   The owner of a gas well, situated near a public highway, may lawfully open it for the purpose of allowing the gas to blow the water out of it, although the noise thereby made is clearly such as to frighten the horses of persons riding or driving along the highway; but, in doing so, he must exercise care not thereby to inflict injury upon such persons or their property.    (p. 153).

5. DAMAGES—*Negligence.*

   Persons using horses on the highway in close proximity to such well, and seeing an agent of the owner at or near it, have the right to presume that he will not open it without warning, or first looking for travelers on the road, and are not guilty of contributory negligence in failing to turn and fly from it, or in failing to give warning of their presence.    (p. 155).

6. NEGLIGENCE—*Proximate Cause.*

   When, by the negligent blowing off of such well, a teamster's horses become frightened, and, in attempting to control them,

| | |
|---|---|
| 54 | 149 |
| 57 | 412 |
| 54 | 149 |
| 58 | 486 |
| 54 | 149 |
| f62 | 542 |
| f63 | 102 |
| f63 | 375 |
| 63 | 518 |
| f63 | 551 |
| 54 | 149 |
| 64 | 421 |
| f64 | 422 |

a line breaks, causing him to fall from his wagon, whereby he is injured, the proximate cause of the injury is the blowing off of the well, although the line is weak and wholly insufficient for such an emergency. (p. 186).

7. JURISDICTION—*Abatement.*
   In such action, if the declaration shows the jurisdiction of the court, and no plea in abatement has been filled, the judgment will not be reversed for want of proof of the venue as laid. (p. 159).

Error to Circuit Court, Wetzel County.

Action by Robert Snyder against the Philadelphia Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

RUCKER, ANDERSON & HUGHES, J. W. McINTIRE, and E. L. ROBINSON, for plaintiff in error.

JOHN A. HOWARD, for defendant in error.

POFFENBARGER, JUDGE:

As the defendant in error, Robert Snyder, driving a two horse wagon loaded with baled hay, along a public road in Wetzel County, approached a point in the road from which a gas well owned by The Philadelphia Company of West Virginia stood about fifty feet distant, W. W. Little, an agent and employee of said company, opened the valve or gate of the pipe in which the gas was confined under great pressure, and permitted it to escape, thereby causing a hissing and roaring noise, which frightened plaintiff's horses and caused him to be thrown or to fall, from the top of the load of hay to the ground, where the wheels of the wagon passed over his leg, badly fracturing it and inflicting, as is claimed, permanent injury. In an action against the company, he recovered a judgment for the sum of two thousand, five hundred dollars, as damages for the injury inflicted by the alleged negligence of said company. Of this judgment, said company complains.

The first assignment of error is predicated upon the action of the court in overruling the demurrer to the declaration and each count thereof. Upon the demurrer an effort is made to take advantage of the failure of the summons to say or recite that

the defendant company is a corporation, it merely naming the defendant as "The Philadelphia Company of West Virginia." An objection of this kind cannot be raised by demurrer. Advantage of it can be taken only by a plea in abatement on the ground of a variance of the declaration from the writ. In cases other than misnomer: "The defendant on whom the process summoning him to answer, appears to have been served, shall not take advantage of any defect in the writ or return, or any variance in the writ from the declaration, unless the same be pleaded in abatement." Code, chapter 125, section 15. *Hoffman* v. *Bircher,* 22 W. Va. 537; *Anderson* v. *Doolittle,* 38 W. Va. 629. The omission does not make the writ void for it is mere matter of description. The corporate name is fully set out and the alleged defect is mere failure to describe the defendant as a corporation. This could have been cured by amendment, and said section 15 permits the amendment to be made. If the defect could be treated as a misnomer, the writ is amendable on mere motion accompanied by an affidavit of the right name, under section 14 of chapter 125. Such plea could not have been filed without having first made the writ a part of the record by demanding oyer thereof, 4 Min. Ins. 1266; 5 Rob. Pr. 98; Hogg's Pl. & F. 166, No. 8: *Stephens* v. *White,* 2 Wash. 212; *Watson's Ex'r* v. *Lynch's Heris,* 4 Munf. 94. To have availed itself of the plea in abatement, oyer of the writ must have been had and the plea in abatement filed before any other plea was put in. A plea in abatement raises the question of jurisdiction, and after a general appearance, the jurisdiction of the court for want of sufficient process cannot ordinarily be raised. 4 Min. Ins. 1266. Objections which do not go to the substance of an action are treated as waived, if not made when the occasion of them arises. "It is a well established rule that by appearing and pleading to the action a defendant waives all defects in the process or the service thereof. The cases go further and imply such a waiver from the defendant's taking or consenting to a continuance as fully as they do from his pleading to the action. The object of the writ is to apprise the defendant of the nature of the proceeding against him. The fact of his taking or agreeing to a continuance is evidence of his having made himself a party to the record, and, of his having recognized the case as in court. It is too late for him afterwards to say that he has not been regularly brought

into court." *Harvey* v. *Skipwith,* 16 Grat. 410.   By appearance
to the action for any other purpose than to take advantage of the
defective execution or non-execution of process, a defendant
places himself expressly in the situation in which he would be
if process were executed upon him. *Mahany* v. *Kephart,* 15 W.
Va. 619; *Bank* v. *Bank,* 3 W. Va. 386; *Lumber Co.* v. *Lance &
Co.,* 50 W. Va. 636.   Had all these dilatory steps been taken by
the defendant, they might have been unavailing even under ad-
verse rulings of the courts, for many decisions hold that it is
unnecessary to append the descriptive words, "a corporation".
See *Gillet* v. *Store Co.,* 29 Grat. 565, in which both writ and dec-
laration omitted the words, but were held good.   *Woolf* v.
*Steamboat Co.,* 62 E. C. L. 103; *Norris* v. *Stalts,* Hob. 110,
*Henriques* v. *West India Co.,* 2 Ld. Raym. 1534; *Reese* v. *Baird,*
5 Rand. 326; *Douglass* v. *Railroad Co.,* 44 W. Va., 267; *Dry
Fork R. R. Co.* v. *State,* 50 W. Va. 235; *Railroad Co.* v. *Sher-
man's Admx,* 30 Grat. 602.   In *Woolf* v. *Steamboat Co.* and
*Norris* v. *Stalts,* it was said that the name argues a corporation,
and that setting it forth impliedly amounts to an allegation that
the defendants are a corporate body.   The view has been adopted
and is still adhered to both in Virginia and this State.   *Gillet* v.
*Stove Co.* and *Dry Fork R. R. Co.* v. *State, supra.* It is inferred
from the absence of anything in the brief in support of this as-
signment of error, that it has been abandoned.   At any rate, it is
clear that there is nothing in it.

The criticism of the declaration is that it fails to show that
the defendant violated any duty which the company owed to the
plaintiff.   It alleges that the defendant owned, controlled and
operated a gas well near the public highway and that it was its
duty to use due care in managing and operating said gas well
and in blowing the same off so as not to interfere with the law-
ful use of said highway by persons riding and driving thereon,
but that it neglected to do so.   It also avers that the plaintiff,
on the 28th day of April, 1897, was, as a teamster, driving his
team upon and over said highway, hauling oil well supplies, mer-
chandise, hay, &c., in a wagon drawn by two horses driven by
him, and when he, with his team, came to a point on said high-
way, near to the said gas well, said defendant, through its
agents, servants and employees, then and there in charge of said
gas well, not regarding its duty in the premises, carelessly and

negligently managed and operated said gas well, and so careless-
ly and negligently caused and permitted the gas from said well
to be discharged and escape with great force and in large quan-
tities into the air, making a loud, hissing, unusual and frightful
noise, calculated to frighten horses and cause them to run away,
and which did then and there frighten said horses so driven by
the said plaintiff, and caused said horses to become unmanageable
and run away, whereby the said plaintiff was thrown, &c.

Although the well was owned by the defendant company, and
was purely private property, the use of that property by the de-
fendant is restricted by the law so far that it cannot be, either
by negligence or wantonness, so operated or handled as to inflict
injury upon persons, or their property. The operation of a gas
well is in no sense unlawful, and as it is necessary to relieve the
well of the accummulation of water by opening the gate and al-
lowing it to blow out, this operation is also lawful and cannot be
regarded as a nuisance *per se*. But it is well settled that a busi-
ness or transacation which is in itself lawful may be so used or
so conducted as to become a nuisance and make the owner liable
for injury resulting therefrom. So a man may make lawful use
of his property, but if he is so negligent and careless in the use
thereof as to inflict injury upon others, he must answer in
damages.

It is a principle vital and indispensable in organized society
that every one must so use his property as not to injure others.
Although he has the right to the exclusive dominion and enjoy-
ment of his own property and may do with it as he pleases, he
must respect the lives, limbs, health and property of others to
the extent of exercising at least ordinary care for their safety in
the use of his property. Such right of dominion and enjoyment
in him is met and limited by the same right existing in other
people. He must live and let live. He owes a duty to the other
and he must so use his own property as not to injure him. At
least, negligence or willful misconduct on the part of the one in
the use of his own property resulting in injury to the other
makes him liable. *Powell* v. *Furniture Co.*, 34 W. Va. 804; *Wil-
son* v. *Powder Co.*, 40 W. Va. 413; *McGregor* v. *Camden*, 47 W.
Va. 193. The cases of *Dickinson* v. *Salt and Coal Co.*, 41 W.
Va. 511, *Woolwine's admr.* v. *Railway Co.*, 36 W. Va.,
329, and *Poling* v. *Railway Co.*, 38 W. Va. 645, relied

upon by the plaintiff in error, do not support its contention. The language quoted from the first, "A party who is using his own property in a lawful way cannot be guilty of a breach of duty to any one," implies that he has not been guilty of negligence or willful misconduct in the use thereof, and in all those cases it was determined by the processes of the law that there had been no negligence.

This principle is very well illustrated in a line of decisions which hold that, although it is lawful for a manufacturing establishment to maintain a steam whistle, that whistle must be used with ordinary care and due regard for the rights of others, and if, by the negligent use thereof, horses are frightened and caused to run away and inflict injury, the owner of the plant is liable for the resultant damages. Between these cases and the one now under consideration, there is a very close analogy. The principles upon which they stand are well established by courts of high standing, as well as supported by fundamental principles of law, and their application to the facts of this case as set forth in the declaration makes it clearly good.

"The use of a steam whistle in a manufacturing establishment is not a nuisance *per se,* but it may be used so as to become such. It has been held that the sounding of the steam whistle of a factory fifteen feet from the platform on which a team is being unloaded is gross negligence which will render the factory owner liable, where the person in charge of the team is not first warned by the employees in charge of the whistle, although the whistle is in plain view from such platform and the owner of the team, while acquainted with its operation, fails to notify his driver thereof. If a horse, frightened by such whistle, pulls at the rope by which he is hitched, and is thereby killed, the proprietor of the establishment using the whistle will not be liable to pay damages, in any event, if it appear that the accident was the combined result of the noise of the whistle and the vicious habit of the horse." I Thomp. New. section 1261.

In *Knight* v. *Mfg. Co.,* 38 Conn. 438, Butler, C. J., said: "Their right to use a whistle must be conceded, but like all other rights it must be so exercised as not to endanger and injure others. It is no answer to say that they did not erect or blow the whistle for any such purpose, or that they had no knowledge that it frightened horses, or that they did not suppose it was cal-

culated to frighten them. These facts, if they existed, they were bound to know or anticipate."

The court refused to give an instruction asked for by the defendant, telling the jury that if the plaintiff, knowing the danger of approaching the gas well, and having reason to anticipate danger, not dependent upon natural causes, but likely to happen by reason of the defendant operating its gas well, and having knowledge of the injury, approached the well, he was guilty of contributory negligence and could not recover unless defendant's agent let off the gas with intent to frighten the horses. It is insisted that this instruction should have been given. As the plaintiff was proceeding along the public highway where he had the right to be, and the gas well had not yet been opened, he was not bound to assume that it would be opened while he was passing. He admits in his testimony that he saw Little approaching the derrick, and from this fact it might have been inferred that Little intended to open the well, but as plaintiff was already in the occupancy of the highway, the team already in close proximity to the well, where the noise, which the witnesses say was about five or six times as great as that of an ordinary locomotive whistle, was likely to frighten his horses, he was not bound to assume that the defendant's agent would do a negligent and reckless act. He had the right to assume that the agent would perform his duty and obey the law, by waiting until after the team had passed. All the evidence bearing on the question is to the effect that the plaintiff was so near the well when he saw Little going to it as to make his position dangerous, if the well should be opened. Can it be said that because he did not turn back and fly from the mere prospect of such danger he was guilty of contributory negligence? The groundlessness of this contention is too apparent to require the citation of any authority.

On the motion to set aside the verdict, which the court overruled, it is argued that there was no proof of the ownership of the well by the defendant company. Throughout the entire trial, with the exception of a single question propounded by counsel for the defendant, the defendant company was never referred to by either counsel or witnesses, by its full name. For the most part, it was called The Philadelphia Company. The ownership of the well was not controverted nor was there even a suggestion or intimation throughout the whole trial that the defendant company

did not own and operate it. The plausible suggestion that the trial proceeded upon the tacit admission of the defendant's ownership of the well need not be adopted, if it could be. There seems to be enough evidence in the record to warrant the finding of the jury upon that point. In the testimony of a witness for the defendant, the following is found: "Q. Are you acquainted with the oil well on what is called the Barr farm in this county belonging to the Philadelphia Company of West Virginia, or gas well? A. Yes, sir. Q. Do you remember the time that Robert Snyder was injured by falling off of a wagon near that well? A. I recollect of hearing of it. Q. Do you know anything about the condition of the road as to bushes along the edge of it at that time, between the road and the well. A. Yes, sir." The witness then proceeds to describe the location. Clearly, he testified to that well as belonging to the defendant company and identified it as the well near which the defendant was hurt. As there is no evidence to the contrary, this is sufficient upon which to rest the verdict as to the ownership of the well and, on that ground, the verdict cannot be set aside. Had there been no admission of ownership by the defendant or proof of it by his own witnesses and no proof of it by the plaintiff, the verdict would have to stand upon the tacit admission of ownership or else be set aside, but proof of it by the defendant relieves the court of the duty of saying whether it can stand upon the implied admission.

Further argument on the motion to set aside the verdict is based upon the theory of contributory negligence on the part of the plaintiff, it being contended that, as the plaintiff knew the location of the well and saw the defendant's agent there, and continued to advance to a point within eighty-two feet of the well, without warning the agent not to open it, and without doing anything else by way of precaution against danger, he took upon himself the risk and cannot be heard to complain of the result. This proposition has been sufficiently discussed in passing upon the instruction. The testimony further shows that, although the horses became frightened and ran, the wagon was not overturned nor the load thrown off, and that shortly after it had started one of plaintiff's lines broke and he fell from the wagon.

Upon these facts, it is insisted that the injury was due to the breaking of the line, and that as the plaintiff, in his business of hauling, was accustomed to driving through a community in

which there were numerous gas wells, many of which were often opened and blown out, it was his duty to provide himself with safe and sufficient lines with which to control his team. This position is untenable, for the reason that the weak condition of the line cannot be regarded as having been the proximate cause of the injury. "Where the alleged intervening cause is in reality only a condition upon or through which the negligent act operated to produce the injuries complained of, the defendant will be held liable." 21 Am. & Eng. Enc. Law, 494. The excitement of the horses caused by the blowing off of the gas well must be regarded as the cause of the injury, not the weak condition of the line through which that cause operated, even if it be conceded that the fall was the result of the breaking of the line and not of the jolting or toppling of the wagon, resulting from the running of the horses. The jury had the right to infer that, but for the negligent act of the defendant, the line, although weak, would not have broken. This principle is illustrated in 1 Thomp. Neg., Section 91, as follows: "A. is passing along the street in his chaise, when the dog of B. leaps at the horse; the horse takes fright and becomes unmanageable; in endeavoring to restrain him, a rein is broken; in consequence of this, the chaise is dashed against a post and broken. The attack of the dog, and not the breaking of the rein, is the proximate cause of the injury. * * * * A street car is running at an unlawful rate of speed, in consequence of which it strikes a dray, breaks its shaft and causes the horse to run away. The driver, while endeavoring to secure the horse, is struck by the broken shaft and hurt. The unlawful act of the street railway company is the proximate cause of his injury. A horse is allowed to run at large on a public street, in violaton of a municipal ordinance. A man is driving a mare along the street, and her colt is running along by her side; the horse chases the colt; this frightens the mare so that she runs away, and both the mare and colt are injured. The owner of the mare and colt has a right of action against the owner of the horse for the damage thus produced."

The proximate cause is not always that which is nearest in time or place to the injury. The meaning of the maxim, *causa proxima non remota spectatur* is that the true cause of an injury is that which brings it about either by direct operation or

by setting in motion other causes as instruments or agents operating under its dominant influence. The proximate cause is the superior or controlling agency as contradistinguished from those causes which are merely incidental, or subsidiary to such controlling or principal cause. Phillips on Insurance, Section 1093, says: "If two causes conspire and one must be chosen, the more scientific inquiry seems to be, whether one is not the efficient cause, and the other merely instrumental or merely incidental, and not which is nearer in place or time to the consummation of the catastrophe." At Section 1132, the same work says: "In case of the concurrence of different causes, to one of which it is necessary to attribute the loss, it is to be attributed to the efficient predominating peril, whether it is or is not in activity at the consummation of the disaster." In *Brady* v. *Insurance Co.,* 11 Mich. 425, Martin, C. J., said: "That which is the actual cause of the loss, whether operating directly or by putting intervening agencies, the operation of which could not be reasonably avoided, in motion, by which the loss is produced, is the cause to which such loss should be attributed." These principles are approved in *Insurance Co.* v. *Boon,* 95 U. S. 117. In *Insurance Co.* v. *Tweed,* 7 Wall. 44, the same principle is applied, in a case in which the property insured was destroyed by fire which originated from an explosion in a building other than that in which the insured property was. By the policy, loss by fire which might happen by means of an explosion was accepted, and the court held that the insurers were not liable. In the opinion, Mr. Justice Miller said: "The explosion undoubtedly produced or set in operation the fire which burned the plaintiff's cotton. The fact that it was carried to the cotton by first burning another building supplies no new force or power which caused the burning." Though these principles are announced in insurance cases, it has already been shown that the courts apply them to negligence cases in seeking the cause of an injury. Whatever the form of action or relation of the parties may be, those principles remain the same. An additional illustration is a negligence case found in *Railway Co.* v. *Madry,* 57 Ark. 306, where a person almost blind, having taken a seat in a passenger car which had been put in place to receive passengers, was killed on the platform by another car approaching from the rear, in attempting to escape, while other passengers succeeded in avoid-

ing injury by getting off. The court held that the fact that the intestate was almost blind did not make him chargeable with contributory negligence in attempting to travel without an attendant, even if sight would have enabled him to escape injury. The reason given was that "his blindness was not the juridicial cause of his injury, but only a condition that made it possible."

Under the impression that such an objection could be raised by motion to set aside the verdict or to arrest the judgment, it is insisted in the brief that there is no proof that the well is located or that the injury occurred, in Wetzel County, and further that it is not shown in what district or particular locality the cause of action arose. The exact place is not material in any aspect of the case. I Chitty. Pl. 394. It need not be either alleged or proved. The county in which it occurred is material and it is necessary to allege it. In other words, the venue must be laid in the declaration. But it does not follow that the judgement cannot stand because there was no proof that the cause of action arose in the county named in the declaration. In an action of this kind, the county is important only as bearing upon the question of jurisdiction, and an objection to the jurisdiction, where the declaration shows jurisdiction on its face, cannot be raised by mere motion. "Where the declaration or bill shows on its face proper matter for the jurisdiction of the court, no exception for the want of such jurisdiction shall be allowed, unless it be taken by plea in abatement." Code, chapter 125, section 16. The defendant cannot allow the action to proceed through trial and verdict to judgment and then complain that the cause of action did not arise in the county in which the venue is laid. If he proposes to contest the jurisdiction of the court on that ground, he must give notice of it by plea in abatement. In *Osborne* v. *Taylor,* 12 Grat. 120, the jurisdiction depended upon a question of fact to be decided by the court, namely, whether certain slaves, necessary parties to the bill, had been emancipated. No plea of the jurisdiction had been filed, and the court held that the statute applied and prevented the making of the objection to the jurisdiction for the first time in the appellate court. In *Telegraph Co.* v. *Hobson Co.,* 15 Grat. 122, it appeared on the trial that some of the defendants resided out of the State and it was held, under the statute, that,

even if this were good ground for objection to the jurisdiction of the court, it was no excuse for arresting the judgment, as, to be available, it must have been set up by plea in abatement. In *Beckley* v. *Palmer,* 11 Grat. 625, and *Hudson* v. *Kline,* 9 Grat. 385, where objections to the jurisdiction in equity were sustained at the hearing, the reasoning of the court indicates that they were sustained simply because the bills on their faces showed want of jurisdiction. Had it been otherwise, the statute would have applied. For further illustration of the application of the statute in analogous cases, see *Bank* v. *Gettinger,* 3 W. Va. 309; *Middleton* v. *White,* 5 W. Va. 572; *Quarrier* v. *Quarrier,* 10 W. Va. 507. But if this were not true, there is enough evidence to warrant the finding, as will be seen by reference to the testimony quoted, concerning ownership of the well.

Upon the whole case, the conclusion is that there was no error and the judgment should be affirmed.

*Affirmed.*

BRANNON JUDGE, (*dissenting*) :

What duty to the plaintiff did defendant break? None. Therefore, there can be no recovery by law. The defendant did only a lawful act in its business. The accident falls within the pale of inevitable misfortune. It is a case of *damnumabsque injuria.* No negligence or wrong is shown, no violation of duty. Taking the case as shown by the plaintiff's evidence there is no law to support the verdict. It is against law. *Veith* v. *Salt Co.,* 51 W. Va. 96.

POFFENBARGER, JUDGE:

Upon petition for rehearing.

In disposing of the assignments of error, it was deemed unnecessary to review the evidence which is conflicting. in the petition for rehearing, lack of evidence of negligence is urged, great stress being laid upon the fact that Little, the agent of the company, says he looked for teams and persons passing upon the road before he opened the well, but saw none. But this testimony does not conclude the question whether there was an exercise of due care. The plaintiff testifies that he saw a man in the derrick, and that he was on high ground and only about a

hundred feet distant from the well when it was opened. W. C. Edwards, a disinterested party, says Snyder stopped his team on top of a rise in the road a short distance from the well, and that Little could have seen him if he had looked. Being further questioned on this point, he re-asserted his positive belief that a man, standing in the derrick, could have seen Snyder' team at the point at which the team was stopped to allow the witness, Edwards, to pass. W. O. Gallaher, who was with Edwards, testified as a witness for the defendant that Snyder's team stopped at a point fifteen or twenty feet from the top of the rise in the road, and that a man on top of the load could see the derrick from that point, and that a man in the derrick could, in his opinion, have seen the team, if he had looked carefully. It further appears from the evidence that on the ground between the well and the point at which the team was, there was some growth of weeds or brush, or, of both, by reason of which the view may have been slightly obstructed. In this state of the evidence, the questions whether the agent could have seen the team and whether he performed the duty of looking for passing teams before opening the well, were clearly proper for the jury and such as the Court cannot pass upon without improperly interfering with the functions of the jury in the trial of the case.