[No. 10465.   Department Two.   April 28, 1913.]

A. E. Heath, *Respondent*, v. Seattle Taxicab Company, *Appellant*.[1]

Appeal—Review—Harmless Error—Instructions.  An instruction assuming a fact not in evidence, while faulty, is not prejudicially erroneous where the only purpose and meaning that it would naturally convey was to cover a general principle, and was without prejudice in view of the controlling issue of fact discussed in the next instruction.

Municipal Corporations—Streets—Ordinances—Speed Limit—Construction.  An ordinance fixing the speed limit for automobiles on "paved" streets applies to a street that is "planked," the term "paving" including any artificial surface that changes the natural surface.

Appeal—Review — Harmless Error — Instructions.  Where an automobile was confessedly exceeding the city speed limit of twelve miles an hour, and the only issue was as to whether it struck the plaintiff, it is harmless error to instruct that the driver was negligent if he was exceeding the speed limit, stated at eight miles an hour, and that it was plaintiff's duty, as a policeman, to arrest the driver if he was exceeding the speed limit.

Same.  In an action for personal injuries sustained by a policeman struck by an automobile, an objection that an instruction assumed that he was standing at a street intersection, when he was three or four feet therefrom, is hypercritical, especially since he had a right to be in the street, and there was no issue as to the speed of the automobile.

Same.  In an action for personal injuries sustained when defendant's automobile struck the plaintiff, an instruction to the effect that the acquittal of the driver on a charge of exceeding the speed

[1]Reported in 131 Pac. 843.

limit precluded his arrest on another criminal charge is harmless, where the jury were plainly told that it could not be considered in the civil case.

DAMAGES — PERSONAL INJURIES — REDUCTION—PENSION. A police pension, under Rem. & Bal. Code, § 8078, being in the nature of accident insurance for which consideration is paid by deduction from the officer's monthly pay, does not reduce the damages which the officer may recover for personal injuries negligently inflicted upon him.

. DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $4,500 for personal injuries sustained by a policeman struck by an automobile, is excessive, and should be reduced to $3,000, where it appears that he sustained a partial dislocation of the shoulder, an injury to the right knee and a bruised back, and the injury, while painful, was not permanent.

Appeal from a judgment of the superior court for King county, Tallman, J., entered March 16, 1912, upon the verdict of a jury rendered in favor of the plaintiff for $4,500, for personal injuries sustained by a pedestrian struck by a taxicab. Reversed, unless $1,500 is remitted.

*Brightman, Halverstadt & Tennant*, for appellant.

*Longfellow & Fitzpatrick*, for respondent.

ELLIS, J.—This is an action to recover damages for personal injuries, claimed to have been suffered by the plaintiff by being struck by a taxicab belonging to the defendant, through the negligence of defendant's driver. The substance of the plaintiff's testimony was as follows: On February 11, 1911, the plaintiff was acting as a police officer of the city of Seattle. His hours were from 8 p. m. until 4 a. m., and his territory included Fremont, a suburb of Seattle. About 3 o'clock in the morning of that day, he saw a taxicab approaching Fremont from the south on Westlake avenue at a very high rate of speed. He stopped the cab, and the driver got out and informed him that he was taking a doctor and a nurse on an urgent call to a confinement case in the northern part of the city. The doctor also got out and confirmed the driver's statement. The plaintiff, after informing them that they had no right to drive so rapidly anyway, allowed the

cab to proceed, first taking the number of the cab. The plaintiff then went to a restaurant for a cup of coffee, and, leaving there at 3:28 a. m., walked one block east on Ewing street to the intersection of Fremont avenue and Ewing street, at which place he arrived at about 3:30 a. m. Upon reaching the corner of Fremont avenue and Ewing street, he saw a cab coming south on Fremont avenue at a high rate of speed. When the cab was within about seventy-five feet of him, he stepped into the street on Fremont avenue and signalled the cab to stop, intending to arrest the driver. Instead of stopping, the driver of the cab increased its speed, running against the plaintiff, causing the injuries complained of. The plaintiff was struck while standing about six feet from the sidewalk on Fremont avenue and three or four feet north of the intersection of Fremont avenue and Ewing street. He testified that, when the cab was from twenty to forty feet from him, he recognized the driver as one William Woelke, the same driver he had stopped going north about half an hour before.

On behalf of the defendant, the driver Woelke, the doctor, and the nurse testified that they were stopped by the plaintiff while going north through Fremont to an urgent call at the home of one A. E. Anderson, their testimony agreeing in all material respects with that of the plaintiff as to this incident. They testified that they arrived at the Anderson residence at 3:10 a. m., just as the child was born; the driver being paid by Anderson and leaving in from two to five minutes thereafter. The driver testified, that he left the Anderson residence at 3:15, and drove from there to Fremont at the rate of about eighteen or twenty miles an hour; that he passed through Fremont going south at about 3:25 a. m.; that he saw no one, and did not run into or injure the plaintiff. The distance from the Anderson residence to the corner of Fremont avenue and Ewing street, as Woelke testified was travelled by the cab, which was the usual route used by automobiles, is, by measurement calculated by speedometer, 2.7

miles. Woelke also testified that the cab on smooth, level road could be run at a speed of between forty and forty-five miles an hour. There was much other testimony on both sides, but it was of an expert, circumstantial and impeaching nature. It will be unnecessary to discuss it.

The jury returned a verdict in favor of the plaintiff in the sum of $4,500. The defendant's motion for a new trial was overruled. Judgment was entered on the verdict, from which defendant prosecutes this appeal.

Of the grounds urged for reversal, all but one relate to the giving and refusal to give certain instructions. The court gave the following instruction:

"One driving a taxicab upon the streets of a city frequented both by day and night by pedestrians and traffic, must use reasonable caution and reasonable care in handling such machine, and such reasonable care should be exercised in the management of the taxicab so as to anticipate such collisions as the nature of the machine and the locality and time suggest as liable to occur, in the absence of such precautions, care and watchfulness. The driver of a taxicab under such circumstances is held to that degree of care which is commensurate with the dangers naturally incident to its use."

It is urged that by this instruction the court assumed that the streets at the place of the accident were frequented both by day and night by pedestrians and traffic, there being no evidence to support this assumption. While it is true that there was no evidence as to the extent to which the streets in question were used by pedestrians in the nighttime, there was evidence to the effect that this particular street was much used by automobiles at all times, as it was the main route from the city proper to the country club and certain road-houses located beyond Fremont. The only point and purpose of this instruction, and the meaning which it would naturally convey to the ordinary mind, is that such care should be exercised in the management of a taxicab as the locality and time would suggest as necessary to avoid accidents. While the instruction is faulty in the particular mentioned, its purpose is so

plain that the fault mentioned could hardly be prejudicial, especially in view of the controlling issue of fact discussed under the next objection.

The court instructed the jury on the question of lawful speed as follows:

"The ordinance of the city of Seattle regulates the speed of automobiles and taxicabs at the place this accident is alleged to have occurred, and that they be run at a speed not to exceed twelve miles per hour, and that in crossing at the intersection of Fremont avenue and Ewing St.,in said city, the speed be not to exceed eight miles per hour, and if, from the evidence, you find that the driver of said taxicab, at the time and place mentioned in the complaint, ran his cab at a greater rate of speed than that allowed by the said ordinance, he was guilty of negligence."

It is argued that this instruction is faulty in that it fixes the maximum rate of speed at twelve miles an hour, whereas, in this locality, it is claimed that the speed ordinance of the city of Seattle places the maximum at fifteen miles an hour, and that it is further faulty in that it fixes the rate of speed allowed at the intersection of Fremont avenue and Ewing street at eight miles an hour, whereas the ordinance makes no distinction as to street intersections and other parts of the street in that locality. The speed ordinance of the city which was in force at the time of the accident is in evidence. Section 16 of that ordinance prescribes the maximum speed for riding or driving horses, and delimits a district of the city, which we shall designate for convenience as the low speed district. Section 17 of the Ordinance is as follows:

"No person shall ride, drive or propel any automobile, autocycle or other motor vehicle, except as specified in the above rule at a greater rate of speed than eight (8) miles per hour along, over or through any public place bounded and described in the above rule, nor at a greater rate of speed than twelve (12) miles per hour along, on, through, or over any paved street outside of said above described district, or at a greater rate of speed than fifteen (15) miles per hour along, on, through or over any public place within the limits of the

city of Seattle, or to pass or cross any street intersection, or round any corner within that certain district in the above rule first described and bounded, at a greater rate of speed than four (4) miles per hour when running on a down grade, or at a greater rate of speed than eight (8) miles per hour on an up-grade."

It is admitted that Fremont avenue was planked at the place in question, but the appellant argues that a planked street is not a paved street, and therefore the maximum rate of speed fixed by the ordinance is fifteen miles an hour, instead of twelve as given in the instruction. We cannot agree with this contention. Paving is a generic term, and may include, and when not otherwise limited must be held to include, paving of any kind, whether of brick, stone, asphalt, wood or planking. Counsel has cited several ordinances in which the words paving and planking are used, but these ordinances relate to different kinds of paving and are not intended to define paving generally. We think the term paving, when used in its generic sense, as was evidently intended in this ordinance, must be held to include the placing of any substance on a street so as to form an artificial roadway or wearing surface, which changes the natural condition or surface of the street. 30 Cyc. 1160; *Ross v. Gates*, 183 Mo. 338, 81 S. W. 1107; *Buell v. Ball*, 20 Iowa 282; *Burlington & M. R. R. Co. v. Spearman*, 12 Iowa 112; *McNair v. Ostrander*, 1 Wash. 110, 23 Pac. 414. We hold, therefore, that the maximum rate of speed fixed by the ordinance at the place in question is twelve miles an hour.

It is equally plain, however, that the last part of the instruction does not comply with the ordinance. The maximum rate of eight miles an hour on an up-grade at street intersections as fixed by the ordinance refers only to the low-speed district as outlined in § 16 of the ordinance. But it does not follow that the error was so prejudicial as to constitute ground for a reversal. From our statement of the evidence, it will be seen that the controlling issue of fact was sharply drawn as to whether or not the appellant's taxicab struck the

respondent at all.   The testimony of the respondent was posi-
tive that it was the appellant's taxicab driven by Woelke.
Woelke's testimony was equally positive that he passed the
point in question about five minutes before the time fixed by
the respondent as the time when the accident occurred, and
that he saw no one and did not strike the respondent.   The re-
spondent testified that the automobile which struck him was
running thirty-five or forty miles an hour, and that the driver
deliberately ran into him when he signalled to stop.   The
driver testified that, in returning from the Anderson resi-
dence, he ran the cab at the rate of eighteen to twenty miles
an hour.   If, therefore, he hit the respondent, as the jury evi-
dently found he did, then he was negligent in that he was
confessedly exceeding the maximum speed limit.   The in-
correct definition of the speed limit in the instruction given
could not have prejudiced the appellant, but rather the re-
spondent, who, on the driver's admission was entitled to have
the instructions limited to the single controverted question of
fact (save that of damages), Did the car in question, while
being driven by this driver at about the time and place speci-
fied, strike and injure the respondent?   If it did not, there
was no cause of action.   If it did, there was no defense, save
as to the amount of recovery.   *Suell v. Jones*, 49 Wash. 582,
96 Pac. 4.

The court also instructed the jury to the effect that if it
was found from the evidence that a part of the plaintiff's
duties as policeman was to see that the speed regulations
were properly observed, and that if the defendant's driver was
exceeding the speed limit established by the ordinance, then
it was the duty of the plaintiff to stop the defendant's driver
and place him under arrest.   It is argued that this instruction
is erroneous because it refers to the speed ordinance of the
city which was incorrectly interpreted in the instruction last
above quoted.   In view of our finding that the last above quoted
instruction, though erroneous, was not prejudicial, it follows
that there was no prejudice in the giving of this instruction.

Moreover, the instruction last complained of, as an independent statement of the law, is unobjectionable.

The court instructed the jury as follows:

"And if you further find that the plaintiff did not exceed the demands, on this particular occasion, in complying with his duties, as a police officer of Seattle, by occupying the position at the intersection of Fremont avenue and Ewing St., as alleged in the complaint, and you further find that plaintiff has proved the other material allegations which I have told you it was necessary for him to prove before he can recover, then you should find for the plaintiff. But if you find that the defendant did not own the said taxicab, or that plaintiff has not proved the material allegations which I have told you it was necessary for him to prove before he can recover in this case, then your verdict should be for the defendant."

It is claimed that this instruction is erroneous in that it assumes that the respondent was, at the time of the accident, occupying a position at the intersection of Fremont avenue and Ewing street as alleged in the complaint, whereas the evidence shows that he was three or four feet north of that intersection. This is hypercritical. If a difference of legal speed as between crossings and other parts of the street had been material, the position of respondent was so near the crossing as to make the lawful speed at crossings as applicable to his position as exactly at the crossing, since it is manifest that any effort to observe a requirement of reduced speed at the crossings would have had its effect in diminished speed before the position of the respondent, within three or four feet of the crossing, could have been reached. In any event, since the issue of fact sharply drawn as to whether or not the appellant's automobile struck the respondent at all was the controlling issue of fact in the case, so far as the accident is concerned, the question of respondent's position was of little materiality, provided he had a right to be in the street at all, which of course cannot be questioned. We find no error in this instruction.

The court gave this instruction:

"If you find from the evidence that defendant's driver, one Wm. Woelke was arrested and submitted to a trial upon a

criminal charge of having hit officer E. A. Heath, the plaintiff herein, on February the 11th, 1911, while driving a machine ·of the Seattle Taxicab Co., and was acquitted of the charge and discharged from custody, then he cannot again be arrested and be tried for that same offense, but you are further instructed that his acquittal or non-acquittal, as the case may be, must be given no weight or consideration by you in passing .upon the issues in this cause, and must not be permitted to influence you either for or against plaintiff or for or against defendant in this trial."

The appellant makes a lengthy argument to show that this instruction was erroneous in that the driver Woelke, having been arrested and tried in the justice court for a misdemeanor in driving at an unlawful speed, was still liable to arrest and trial for assault in the second degree in assaulting an officer with intent to prevent arrest, or of assault in the first degree in assaulting the officer by means likely to produce death. Without entering into a discussion of this collateral question, it will suffice to say that this instruction was obviously intended to inform the jury that acquittal of a criminal charge upon the same state of facts as alleged as grounds for damages in a civil action would be immaterial to the issues in the civil action. The reference to another prosecution was unnecessary, but it was not prejudicial, since the jury were plainly told that the acquittal or nonacquittal must not be permitted to influence the decision one way or another. The jury having been thus plainly told that the matter was immaterial, it can hardly be assumed that the possibility of prosecution for a different offense, founded upon the same state of facts, even had it been included in the instruction, would have influenced the verdict. We find no reversible error in this instruction.

It is next argued that the court committed error in refusing to give the following instruction requested by the appellant:

"The plaintiff in this case in his complaint asks for $14,-000 general damages, and in addition thereto the sum of $300 for loss of time and wages, and $225 for expenses incurred

for hospital and medical services, and for the sum of $50 for additional medical services. I instruct you that if you believe from the evidence that plaintiff was reimbursed for his lost wages out of the police pension fund of the city of Seattle and was reimbursed, wholly or in part, for his hospital and medical bills, then the plaintiff is not entitled to recover the sums for which he has been reimbursed out of said fund, and you shall allow plaintiff only such sum or sums as he actually lost by reason of loss of time and wages and hospital and medical services."

The police pension act, Laws of 1909, page 59 (Rem. & Bal. Code, § 8078 *et seq.*), after providing that certain license fees, money received from sales of unclaimed property, and the proceeds of certain fines shall go to make up the pension fund, further provides that the treasurer of any incorporated city, subject to the provisions of the act, shall retain from the monthly pay of each policeman a sum equal to one and one-half per cent of the monthly pay of such officer and pay the same directly into the pension fund. The plain purpose of the act is to create a fund for the benefit of the policeman, into which he pays one and one-half per cent of his monthly salary as a consideration for participation in its benefits. It is, in its essence, municipal insurance for which a consideration is paid. We can see no difference in principle between this and ordinary accident insurance, so far as the question here involved is concerned. The fact that a person injured by another's negligence, having accident insurance for which he has paid, is reimbursed by the insurance company for his loss of time and expenses caused by the injury, cannot preclude him from maintaining an action for these same items against the person causing the injury. It would be contrary to public policy, and shocking to the sense of justice, to hold that the proceeds of insurance paid for by the injured person for his own benefit or that of his widow and children should inure to the benefit of, and grant immunity to, the person whose negligence, wilful or otherwise, injured him or caused his death. 2 Shearman & Redfield, Negligence (5th ed.), § 765;

*Harding v. Town of Townshend,* 43 Vt. 536, 5 Am. Rep. 304; *Coulter v. Pine Township,* 164 Pa. St. 543, 30 Atl. 490; *Sherlock v. Alling,* 44 Ind. 184; *Althorf v. Wolfe,* 22 N. Y. 355. The same is true of a pension paid to the widow from a fund not contributed to by the person causing a wrongful death. *Railway Co. v. Maddry,* 57 Ark. 306, 21 S. W. 472.

The situation here presented is distinctly different from that found in *Nelson v. Western Steam Nav. Co.,* 52 Wash. 177, 100 Pac. 325. There the plaintiff, claiming to have been injured by the negligence of the steamship company, was held not entitled to recover for his hospital and physician's fees, which were paid from the seamen's fund. That fund is created under a Federal law by payments made by the various steamship companies, and is not contributed to by the seamen. It should therefore inure to protect the steamship company from paying again items of expense which have already been paid from the fund, in which the steamship company has a direct and pecuniary interest. The difference is plain. The instruction requested was properly refused.

Finally, it is contended that the verdict is excessive. The evidence shows that the respondent suffered a partial dislocation of the right shoulder, an injury to the right knee, and that his back was severely bruised. From the injury to the knee he has completely recovered. The chief remaining result of the injury is that caused by the dislocation of the shoulder. He was injured at 3:30 o'clock in the nighttime, and hung from the side of the elevated planked roadway at the place of the injury until between four and five o'clock in the morning in an unconscious condition. The injury was doubtless a most painful one, and entailed at the time most severe pain and suffering, and still entails considerable pain and inconvenience. The respondent has lost weight, but that was not attributed to the injury by any physician who testified, but rather to a subsequently developed bilious attack. While his shoulder was, at the time of the trial, still lame and painful when his arm was raised, and there was a marked limi-

tation of the motion of the right arm, none of the three physicians who had examined him and at one time or another treated him, testified that the injury would prove permanent. All of them either gave the opinion that it would not be permanent or left that unmistakable inference. On the whole, we think that the recovery was excessive, and that it should be reduced to $3,000.

The case is therefore remanded with direction to vacate the judgment on return of the remittitur, and if respondent, within twenty days, in writing remit from the verdict the sum of $1,500, that the court enter judgment for $3,000 against appellant and also against the surety on the supersedeas bond, otherwise a new trial shall be granted.

The appellant may recover its costs.

MOUNT, MAIN, FULLERTON, and MORRIS, JJ., concur.