# CHARLESTON

## TRUEX *v.* SOUTH PENN OIL CO.

### Submitted June 6, 1907. Decided November 12, 1907.

1. NEGLIGENCE—*Blowing Whistle Near Highway.*

   The owner of a boiler near a highway, on which boiler is a large steam whistle used for giving employes time for beginning and closing work, which, when blown, makes a loud, course noise calculated to frighten horses, must not blow the whistle negligently, but must keep a lookout for horses on the highway, and is liable for injury resulting from the fright and running away of horses on the highway caused by blowing the whistle when such horses are near it. (p. 542.)

2. TRIAL—*Procedure—Instructions.*

   Before chapter 38, Acts 1907, it was not reversible error for a court to read to a jury first in order, instructions asked by the defendant, and next, those asked by the plaintiff. (p 545.)

3. APPEAL—*Review—Presumptions—Affirmative Error*.

A party who wishes the court, under Code, chapter 116, section 31, to state to the jury that a juror knowing anything relative to a fact in issue must disclose the same in open court, but not to the jury out of court, must ask the court to make the statement; otherwise the omission to do so will not be ground of reversal. Where the record is silent as to this, such omission will not be presumed, but rather it will be presumed that the court made such statement. (p. 545.)

Error to Circuit Court, Wetzel County.

Action by W. H. Truex against the South Penn Oil Company. Judgment for plaintiff. Defendant brings error.

*Affirmed.*

A. B. FLEMING, THOS. P. JACOBS, and C. POWELL, for plaintiff in error.

J. H. STRICKLING and E. L. ROBINSON, for defendant in error.

BRANNON, JUDGE:

The South Penn Oil Company was using a boiler on its premises in the production of oil, and on the boiler was a steam whistle used in the operations of the company for giving the hours for commencing and quitting work to its employees by blowing. One end of the boiler was two feet from the edge of a public highway and eighteen feet from its center. On the boiler was the steam whistle, eleven feet from the highway. W. H. Truex was riding on horse back on the highway and when distant from the boiler one hundred and seventy-five feet, having come down the road several hundred feet before reaching the boiler, and having passed it by said distance of one hundred and seventy-five feet, the whistle was sounded by the servant of the company, frightening Truex's horse and causing it to run away and fall on Truex's leg, throwing him against a bank on the highway, and causing injury to him. In an action against the company he recovered a verdict and judgment for $1,500 damages, and the company brings the case to this Court.

The most material point in the case arises upon the refusal to the defendant of an instruction, "That under the law

and the evidence in this case the plaintiff is not entitled to recover, and you are therefore directed to find a verdict for the defendant." I consider that the case is ruled in this respect by the case of *Snyder* v. *Philadelphia Co.*, 54 W. Va. 149. There a gas well situated near a public highway was opened making a loud noise and frightening a team in the highway, and it was held that though such use of the gas well was not a nuisance *per se*, as the noise made was such as to frighten horses on the highway, if the act was performed negligently the company was liable. That case holds that whilst a person or company may lawfully so use a gas well though near a highway and it is not *per se* a nuisance, still it must not be negligently used, but its use must be characterized by such care as will prevent injury to persons using the highway. It says that the use of a steam whistle in a manufacturing establishment is not a nuisance *per se*, but it may be used so as to be such, and that care and caution are necessary in its use. In this case the evidence is that the highway could be seen for several hundred feet from the boiler in the direction from which Truex rode, and for more than one hundred and seventy-five feet in the direction in which he rode after passing the boiler. The engineer could have seen Truex approaching the boiler long before Truex reached it, and as he passed the boiler, and for two hundred feet at least after he passed it. The engineer was standing at the boiler near the road when Truex passed and Truex spoke to him. The whistle was a very large whistle, six inches in diameter, doubly larger than whistles usually used for such purpose, and it made a loud, heavy, grum sound, well calculated to frighten horses, and emitted a large volume of steam. The law regards public highways as of the utmost importance to the public and is assiduous to render them safe for public use. This ought to be done. It regards also the use of private property highly. It says that a manufacturing establishment may lawfully maintain a whistle in the transaction of its business. Here are two rights. Both valid in the eye of the law. The law says to both that the right must be so used with prudence and care, that one shall not negligently invade the other. Under the *Snyder Case* the company was not allowed to blow that whistle while a traveler was passing along the highway so near to the boiler

that the whistle might frighten the rider's horse, and that a lookout for travelers must be kept. By the evidence uncontradicted the engineman could have seen Truex riding along the highway for hundreds of feet. By the evidence of Truex, whom the jury credited as its verdict shows, the engineman did see him, and blew the whistle before he had gotten a reasonable distance from it. The road ran two hundred feet from the whistle and then turned and ran back in the direction of the whistle about two hundred feet, within one hundred feet of the boiler. The engineman knew the road well. He knew that Truex would go about two hundred feet from the boiler, then turn and come back toward the boiler fully that distance before it would be safe to blow that whistle, because Truex would still be close to it, and it was his duty to wait until Truex should pass beyond those limits. For legal principles I refer to the opinion of JUDGE POFFEN-BARGER in the *Snyder Case.* I will add some. In *Powell* v. *Nevada C. & O. Ry.*, 28 Nevada 40, 17 Am. Neg. Rep. 128, the railroad company had a steam whistle on its shop six feet from a street and a traveler's horse took fright at the sounding of the whistle and ran away injuring the rider, and it was held that a statute authorizing the company to erect all buildings, fixtures and machinery for its operation, did "not protect the company in such a use of a steam whistle in its shop as to frighten horses and thereby injure others." In *Albee* v. *Chappaqua Shoe Co.*, 62 Hun. 223, it was held that a manufacturing company which maintained a steam whistle constructed so as to be heard for miles, very near to a platform of the freight station of a railroad, was liable for sounding the whistle three times and frightening Albee's horse at the station causing it to run away and injure him. The court held that "a person has no right to do upon his own premises an act which detracts from the safety of travelers or renders the highway disagreeable." In that case, as in the Nevada case, there was an element that is found in this case, namely, that the whistle made loud noises, as this whistle did, owing to its great and unusual size. Counsel for Truex lay stress upon the fact as an element bearing on the question of negligence, and I think properly so. A whistle of small size amply sufficient to be heard a short distance by employees, so as to tell the hour of beginning and

quitting work, would be very different from a great whistle of six inches in diameter, making an alarming sound heard for miles around. What the use of such a whistle when a smaller one would answer all purposes? This whistle suddenly giving behind a horse a loud blast and kept up until the horse had run four hundred or five hundred feet or more would be very much calculated to frighten any horse not used to it. The evidence is that the horse while of good metal was safe. The livery stable man proves this. Elliott on Streets, section 649, lays down the propsition that, "An object at the side of a highway, or in close proximity thereto, of such character that it is naturally calculated to frighten horses of ordinary gentleness, may constitute a nuisance." " We have already, when treating of causal connections, noticed that it is one of the natural incidents of the employment of horses on a highway that they should be frightened by extraordinary sights or sounds. Those who negligently and unnecessarily, therefore, place such objects on a highway, are liable for the consequences, if damage of this kind result. Nor can the owner of land erect on it, so as to impinge upon a highway, implements, flags, or banners, thus calculated to frighten horses."   *    *    *   "Yet it must be remembered that there are some instruments of alarm, *e. g.* steam-whistles on locomotives, which are essential to important industries, which are tacitly if not expressly licensed by the state. The use of these is not *per se* negligence, though animals be thereby frightened and injury ensue. It is otherwise when the use is not necessary to the industry. Thus it has been correctly held that the proprietors of factories are not entitled to use steam-whistles on their factories, so located, of such character, and placed in such manner, as to frighten horses of ordinary gentleness when passing upon the highway adjoining their land; and they are responsible for an injury caused by an unnecessary, alarming or frightening use of them. It is conceded, however, that the law is otherwise as to whistles upon railroad engines. At the same time, where the whistle is negligently and wantonly sounded, so that horses lawfully in the vicinity are caused to run off and injury is inflicted, it is correctly held that the company is liable. So liability attaches for frightening horses by the negligent discharge of a gun, or the beating of a drum near the highway." Wharton

on Neg. sections 835, 836.   I repeat that the fact that Truex was on a public highway is a large consideration in the case. The law seems to hold that another, though exercising a lawful right on his own premises, must so exercise it, with care and caution, and without negligence, as not to hurt one lawfully using a public highway.     So we think the instruction was properly refused.

Complaint is made of another instruction, but not argued. Complaint is made that the court erred in reading to the jury first the instructions asked by the defendants, and next, those of the plaintiff.   We do not see why there is any error in this.   It may be unusual, but it is not a ground of error. By an act passed after the trial of this case it is provided that instructions given by the court on its own motion shall be read ·first; those of the plaintiff shall be read second, and in any event before those of the defendant; those of the defendant shall be read last; and none shall be read twice except at the request of the jury.   Chapter 38, Acts 1907.   We do not intimate any opinion as to whether departure from it would be reversible error.

Complaint is made that the court did not inform the jury that a juror knowing anything relative to a fact in issue in the case must disclose it in open court, but not to the jury out of court, as required by Code, chapter 116, section 31, Ann. Code 1906, section 3731.   It does not appear that any request was made of the court to make such statement to the jury, nor was there any exception for its failure to do so, if it did fail to do so.   If any exception had been made, the court could and would have corrected its omission.     Fairness to the court would demand that a request be made to make the statement, or that the attention of the court should be called to it before retirement of the jury, or certainly before the verdict.   It is claimed that the record must affirmatively show compliance with that statute, and if it does not so show, the presumption would be that the court did not do so.   We cannot sustain this position.   We think that error must affirmatively appear.   Indeed, we think the presumption would be that the court performed its duty, unless the contrary appear.   As somewhat akin to this matter see *State v. Beatty*, 51 W. Va. 232, holding that even in a murder case the court is not bound to instruct that the jury may

find that the defendant be confined in the penitentiary, and not hanged, unless there be a request, and where the record is silent as to this, it will be presumed that the court did so, or that such instruction was waived.

We are compelled to affirm the judgment.

*Affirmed.*