SOUTHERN PAC. CO. v. CAVIN.

(Circuit Court of Appeals, Ninth Circuit. March 19, 1906.)

No. 1,252.

1. COURTS—FEDERAL COURTS—RULES OF DECISION.

In an action by a passenger, for injuries sustained by the alleged negligence of a carrier, the Circuit Court of Appeals is governed by the law as declared by the United States Supreme Court with reference to the measure of care required of the carrier.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, §§ 325, 327.

State laws as rules of decision in federal courts, see notes to Wilson . v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

2. CARRIERS—INJURIES TO PASSENGERS—BURDEN OF PROOF—RES IPSA LOQUITUR.

In an action against a carrier for injuries to a passenger, the happening of the injurious ·accident establishes a prima facie case of negligence on the part of the carrier and the passenger being in the exercise of due care, the burden rests on the carrier to show that its whole duty was performed, and that the injury was unavoidable by human foresight.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 1283-1294.]

3. DAMAGES—INSTRUCTIONS.

In an action against a carrier for injuries to a passenger, an instruction that if plaintiff received the injuries complained of by reason of defendant's negligence alleged, and at the time of such injury plaintiff had been suffering from some disease, and the injuries hastened the development of the disease, and thereby, without plaintiff's fault, his present condition resulted from such injury, then he was entitled to recover such damages as the jury determined he had sustained from the injury, clearly limited plaintiff's recovery to the injuries he sustained by reason of defendant's negligence, and was therefore proper.

4. WRIT OF ERROR—REVIEW—DAMAGES—EXCESSIVENESS.

In an action in the federal courts for personal injuries, the excessiveness of the damages awarded can be reviewed only on a motion for a new trial in the trial court, and not on a writ of error.

[Ed. Note.—For cases in point, see vol. 3, Cent. Dig. Appeal and Error, §§ 3944-3947.]

5. EVIDENCE—NEWSPAPERS.

Where, in an action for injuries to a passenger defendant claimed that the accident resulted from a cloud burst which was an act of God, and a witness who testified concerning the cloud burst stated that the editor of a newspaper had interviewed him concerning it, and had afterwards published an account of the interview, such proof did not authorize the introduction of the newspaper account in evidence.

6. CARRIERS—WHO ARE PASSENGERS—MAIL CLERKS.

A mail clerk while serving the United States on board a passenger train is to be regarded as a passenger.

[Ed. Note.—For cases in point see vol. 9, Cent. Dig. Carriers, § 979.

Who are passengers, see note to Chamblin v. Pierson, 31 C. C. A. 164.]

7. EVIDENCE—EXAMINATION OF EXPERTS—REFERENCE TO AUTHORITIES.

Where, in an action for injuries to a passenger, a witness testified that he had been a life insurance agent for 11 or 12 years, was familiar with the standard life tables and that the American experience tables were the ones most commonly used in the United States, he was properly permitted to testify that according to those tables plaintiff's expectancy was 29.62 years.

In Error to the Circuit Court of the United States for the Northern District of California.

See 136 Fed. 592.

This action grew out of the same railroad accident that was under consideration in the case of Southern Pacific Company v. Schuyler, 135 Fed. 1015, 68 C. C. A. 409. James C. Cavin was, as was Schuyler, a mail clerk on board the train at the time of the accident, and received severe injuries in the wreck, for which he sued the railroad company for $40,000 damages, securing a verdict and judgment in the court below for $15,000. After the case was brought here, Cavin died. His widow was appointed administratix of his estate, and as such was duly substituted as the defendant in error.

In his complaint Cavin alleged that at the time he received the injuries in question he was a young, able-bodied, well-preserved, and healthy man, was then earning $1,400 a year, and that his then life expectancy and period of such earning was 30 years. He alleged that by the derailment of the train on which he was at the time working as a United States mail clerk, and which he charged was caused by various alleged negligent acts and omissions of the railroad company, he was instantly rendered unconscious, and that these were his injuries: "His eyelid cut and the sight permanently injured; received a severe cut under the chin; left arm cut to the wrist from a point half way between the elbow and wrist; received injuries on the back, and to the spinal column, causing a partial paralysis of the lower limbs; received internal injuries, seriously and permanently, injuriously affecting the lungs; by said injuries plaintiff has suffered great physical pain and mental anguish, without any fault or neglect on his part, but solely through the negligence and want of care of said dependant."

The answer of the defendant company to the complaint denied all of its allegations of negligence, and the extent of the plaintiff's injuries, and set up in defense that the accident in which Cavin was injured was the result of an unprecedented flood, and that in all particulars it had exercised the greatest care, prudence, and foresight.

The evidence in the case in respect to the cause and circumstances of the accident, is substantially the same as it was in the Schuyler Case, where they are detailed as follows: "The defendant in error was a mail clerk on a railroad train which was ditched near Mill City by the washing out of a fill or embankment. The embankment was about 150 feet long, 24 feet high, and 16 feet wide at the roadbed, and sloped gradually downward and away. It was constructed at a point where a ravine or dry wash comes down to the railroad. A culvert three feet by four feet was constructed through the embankment to carry off the water which came down the ravine. Shortly before the accident, a volume of water gathered at the embankment in excess of the capacity of the culvert. The fill was undermined by the water, and gave way beneath the weight of the train. The complaint charged the plaintiff in error with negligence in failing to exercise proper care in operating its train, and in failing to construct and keep its roadbed in proper condition and repair. The evidence was that the ravine, spoken of in the testimony as 'Willow Creek,' across which the embankment extended, was ordinarily dry, but that at times it carried large quantities of water which came to it from a watershed of considerable area. The culvert had been sufficient, however, for many years, to carry away the water and prevent injury to the embankment. The train was wrecked about 6 o'clock in the morning. A culvert about three miles west of the wreck, having a capacity three times that of the culvert at the place of the wreck, was found to be washed out at about 8 p. m. on the day before, and thereby the train on which the defendant in error was carried had been laid up for some six hours immediately before the wreck. No inquiry was made by the train crew, the wrecking crew, or any one as to the condition of the culvert at the place of the wreck. The water was running in the ravine there at 1:30, some 15 hours before the wreck, and was rising rapidly in the creek during all of that time. On the afternoon of the 16th, ditches around Mill City, which is two miles from the place of the wreck, were running full of water. The temperature had

risen, a warm wind was blowing, rain was falling, the snow was melting. There was a Japanese track walker, whose duty it was to patrol the track, where the wreck occurred, from 1:30 p. m. to 6 p. m. of the 16th. He was not produced as a witness. There was evidence that the plaintiff in error had made efforts to find him, but had been unable to discover him at the time of the trial of the cause, which was some two years after the wreck occurred. It was shown that he was at Mill City for about five months after the date of the wreck, and that within less than three months after the wreck an action had been commenced against the plaintiff in error to recover damages for the death of a passenger who had been killed in the wreck. About five hours prior to the accident a heavily loaded repair train passed over the fill without difficulty, but the crew could not see down the embankment more than five feet, and did not see the water which was dammed up. There was evidence of a cloud-burst, which lasted about 15 minutes, on the morning of the 16th, at a point about 25 miles from the place of the wreck. It was the contention of the plaintiff in error that the accident was caused by an unforeseen and unprecedented accumulation of water resulting from an act of God, and that it had used due diligence in constructing the embankment and in patrolling its track."

P. F. Dunne and Frank McGowan, for plaintiff in error.

Houx & Barrett and James G. Maguire, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The principal points made on behalf of the plaintiff in error relate to the giving and the refusal to give, by the court below, certain instructions to the jury. The one most urgently insisted on is the alleged error of the court in instructing the jury, as it did, that "the derailment of the car in which plaintiff was riding at the time of the wreck in question, is prima facie evidence of defendant's negligence, and the plaintiff being himself in the exercise of due care, the burden is upon defendant to prove that it was not guilty of negligence, and that its whole duty was performed to guard against and prevent derailment; and the burden is upon it to prove that such derailment was unavoidable by the exercise of the foresight, vigilance, and diligence of a very cautious, prudent, and vigilant person." In the same connection the plaintiff in error requested, and the court below refused to give to the jury, this instruction:

"In cases like the present a prima facie case is established when the plaintiff shows that he was injured while being carried as a passenger by the defendant, and the injury was caused by the manner in which defendant used or directed the instrumentality under its control. This fact, when established by evidence, but makes out a presumptive case on the issue of negligence, and is only satisfactory if uncontradicted. It is not intended by this presumption, nor this instruction, to shift the burden of proof of the whole case to defendant. It means that upon a showing of these facts, plaintiff has established negligence on defendant's part, and defendant must meet this proof by showing that the injury was without any negligence on its part."

The action of the court in each particular was duly excepted to by the plaintiff in error, and is duly assigned for error.

It is insisted by counsel that the instruction given by the court imposed upon the plaintiff in error a greater burden than the law au-

thorizes, in that it cast upon the plaintiff in error the burden of proving that it was not guilty of negligence "with reference to the whole case. and not with reference to the particular act of derailment," and that it does not properly distinguish between the burden of proof and the weight of evidence. Counsel rely, in support of their contention, particularly upon the cases of Patterson v. S. F. & S. M. Elec. Ry. Co. (Cal. Sup.) 81 Pac. 531, and Scott v. Wood, 81 Cal. 398, 22 Pac. 871. In the latter case the court was considering the general rule prevailing in ordinary civil actions. Whether there is any conflict or inconsistency between the Patterson Case and the subsequent one in the same court of Cody v. Market Street Ry. Co. (Cal. Sup.) 82 Pac. 666, and the prior cases of Green v. Pacific Lumber Co., 130 Cal. 435, 440, 62 Pac. 747; Osgood v. Los Angeles Traction Co., 137 Cal. 280, 70 Pac. 169; and Treadwell v. Whittier, 80 Cal. 574, 22 Pac. 266, 5 L. R. A. 498, 13 Am. St. Rep. 175, we need not consider; for whatever the rule may be in the state courts, we are, in cases like the present, to be governed and controlled by the law as declared by the Supreme Court of the United States. "Since the decisions in Stokes v. Saltonstall, 13 Pet. 181, 10 L. Ed. 115, and Railroad Company v. Pollard, 22 Wall. 341, 22 L. Ed. 877," said that court in Gleason v. Virginia Midland Ry. Co., 110 U. S. 435, 443, 11 Sup. Ct. 859, 862, 35 L. Ed. 458:

"It has been settled law in this court that the happening of an injurious accident is in passenger cases prima facie evidence of negligence on the part of the carrier, and that (the passenger being himself in the exercise of due care) the burden then rests upon the carrier to show that its whole duty was performed, and that the injury was unavoidable by human foresight. The rule announced in those cases has received general acceptance; and was followed at the present term in Inland & Seaboard Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270."

The reason for the rule is that in the very nature of things the passenger rarely, if ever, can know the cause or causes of the injury, while the carrier has the means at its command to show the facts, and, if it is free from blame, to exonerate itself. Whitney v. Railway Co., 102 Fed. 850, 852, 43 C. C. A. 19, 50 L. R. A. 615; Denver & R. G. Ry. Co. v. Fotheringham (Colo. App.) 68 Pac. 978.

The second of the principal contentions on the part of the plaintiff in error is, we think, equally without merit. It grows out of the following portion of the charge of the court:

"You are further instructed that if you find from the evidence that the plaintiff received the injuries complained of by reason of the defendant's negligence alleged in the complaint, and that at the time of the reception of such injuries the plaintiff had been suffering from some disease, and further find that such injuries hastened the development of the disease, and that thereby, without the fault of the plaintiff, his present condition, whatever you may find that to be, has resulted from such injury, then I instruct you that the plaintiff is entitled to recover such damages as you may determine he has sustained from the injury."

By this instruction the jury was clearly limited in the awarding of damages, to such injuries as they should find the plaintiff sustained by reason of the defendant's negligence; which is in accordance with the rule laid down by Sutherland in his work on Damages

(3d Ed.) in section 1244, and the other authorities cited by counsel for the plaintiff in error. The contention that the defendant was taken by surprise by the allegation contained in the complaint, to the effect that Cavin was, at the time of the accident a well and able-bodied man, is negatived by the defendant's cross-examination of the plaintiff Cavin, and by its examination of the witness W. B. Coffey. We have examined the charge of the court below with care, and are of opinion that it very clearly and fairly gave the jury the law applicable to the case, and left the facts of it for their determination.

What was said by the Supreme Court in the case of Railroad Co. v. Winter's Adm'r, 143 U. S. 60, 75, 12 Sup. Ct. 356, 361, 36 L. Ed. 71, answers two of the other points of the plaintiff in error:

"Whether the verdict was excessive, is not our province to determine on this writ of error. The correction of that error, if there were any, lay with the court below upon a motion for a new trial, the granting or refusal of which is not assignable for error here. As stated by us in Ætna Life Ins. Co. v. Ward, 140 U. S. 76, 11 Sup. 720, 35 L. Ed. 371: 'It may be that if we were to usurp the functions of the jury and determine the weight to be given to the evidence, we might arrive at a different conclusion. But that is not our province on a writ of error. In such a case we are confined to the consideration of exceptions, taken at the trial, to the admission or rejection of evidence and to the charge of the court and its refusals to charge. We have no concern with questions of fact, or the weight to be given to the evidence which was properly admitted.'"

That the court below did not err in sustaining the objection to the admission in evidence of the article published in the Lovelocks Tribune, March 2, 1901, was held by this court in the case of Southern Pacific Co. v. Schuyler, 135 Fed. 1015, 68 C. C. A. 409, and that Cavin, while serving as a United States mail clerk on board the defendant's train, is to be regarded as a passenger, was held by this court when the present case was formerly under consideration. Cavin v. Southern Pacific Co. (C. C. A.) 136 Fed. 592. But one other point made by counsel for the plaintiff in error need, we think, be specially mentioned, although we have given to all of them careful consideration, and that relates to the testimony of the witness Meals, who, having testified that he was a life insurance agent, and had been such for 11 or 12 years, and was familiar with the standard life table used by life insurance companies, and that the American experience tables are the ones most commonly used in this country, was permitted, against the objection of the plaintiff in error, to testify that, according to those tables, Cavin's life expectancy was 29.62 years. In this there was no error. Shover v. Wyrick (Ind. App.) 30 N. E. 207; Chicago, I. & L. Ry. Co. v. Neff (Ind. App.) 56 N. E. 927.

The judgment is affirmed.